KOLLEN v. SOOY.

1. DEEDS—EFFECT OF ACCEPTANCE—ASSUMPTION OF MORTGAGE—CONTRACTS.

Acceptance of a deed containing a condition that the grantees should assume an incumbrance upon the property, and should pay an indebtedness secured thereby, operated as an agreement of the joint grantees to assume and pay the mortgage debt.

2. VENDOR AND PURCHASER—ASSUMPTION OF MORTGAGE.

Having assumed to pay an outstanding mortgage, the grantees in the deed could not escape their liability by conveying the property to third parties.

3. DEEDS—MORTGAGES.

Such an agreement or covenant, made with the grantor, inures to the benefit of the mortgagee, who may treat both vendor and purchaser as his debtors and enforce the obligation in foreclosure proceedings.

4. SAME—SUBROGATION—MORTGAGES.

Upon being compelled to pay such incumbrance, the purchaser becomes, by subrogation, an equitable assignee of the mortgage, and, where he procures an assignment in writing from the mortgagee, does not cancel the instrument by paying the debt, but obtains a right to enforce the agreement to assume the obligation, as against the vendor.

5. MORTGAGES—FORECLOSURE—EQUITY.

Mortgages can only be foreclosed by statutory publication or

by a foreclosure suit: equity has jurisdiction only pursuant to statutory provisions.

6. SAME—PERSONAL DECREE—DEFICIENCY.

The power to render a`personal decree against persons obligated to pay a mortgage is based on statute, and, apart from chancery proceedings for foreclosure, there is no authority for a suit in equity to recover against the obligors therein.

7. SAME—TRUST.

Nor was any trust created by the contract to assume the mortgage that can be enforced in equity.

Appeal from Ottawa; Padgham, J. Submitted June 10, 1912. (Docket No. 54.) Decided October 2, 1912.

Bill by George E. Kollen against Mortimer A. Sooy and another for the recovery of a money decree. From a dismissal of complainant's bill he appeals. Affirmed.

*Gerrit J. Diekema,* for complainant.

*Mortimer A. Sooy (Charles H. McBride,* of counsel), for defendants.

STEERE, J. This is an appeal by complainant from a decision of the Ottawa circuit court in chancery by which his bill, filed for the recovery of $396.42 claimed due from the defendants under an agreement to relieve certain property from incumbrance, was dismissed. Defendant Sooy answered. Defendant Post was defaulted for want of answer.

On and for some time prior to the 24th day of May, 1907, Jennie Smith, of Grand Rapids, Mich., was and had been the owner of part of lots 5 and 6, block 62, city of Holland, Kent county, Mich., worth $1,000 to $1,200, subject to two unpaid mortgages, certain taxes and mortgage foreclosure expenses, but, in the opinion of competent witnesses, worth the sum of $235 above incumbrances. One mortgage was given to John W. Bosman on November 4, 1903, for $600 purchase money, on which about $200 had been paid, and assigned to William H. Van Den Berge. The other mortgage was made to Fred Heiftje for $233.75.

On said 24th day of May said Jennie Smith was adjudged insane, and one Maggie Brown was appointed her guardian.  As such guardian said Brown, under an order of the probate court, sold the property in dispute to defendants Mortimer A. Sooy and Richard H. Post, subject to all existing liens and incumbrances, said Sooy and Post paying to said guardian $237.50, "subject to said liens and incumbrances, which said parties assume and agree to pay," as specified in the deed to them, which deed was duly recorded in the Ottawa county register of deed's office.  On the 3d day of June, 1907, Post, assuming to act for himself and Sooy, negotiated a sale of the same to one Cass Denny on contract for the sum of $1,300, $25 down, balance at $10 per month.  On the 9th day of July following Mortimer A. Sooy and wife quitclaimed the property to Post.  On the 15th day of July, 1907, the date of the recording of the quitclaim deed above referred to, Post and wife conveyed the property to complainant, subject to the Cass Denny contract, on which said Denny had then paid about $35.  Complainant knew that said mortgages were unpaid, but accepted a deed from Post, believing Sooy and Post would carry out their agreement set out in their deed and pay the same.

The mortgage to Heiftje was paid in full by one or both of defendants, and $250 and some interest, on the Van Den Berge mortgage; Post promising the balance would be paid according to the terms of the deed.  Upon learning the fee of the land was in complainant, Van Den Berge, through his agents, demanded payment of the balance due on his mortgage, threatening foreclosure if the same was not paid.  Prior to calling upon complainant, the said agent of Van Den Berge had called upon the defendant Sooy to pay the same, who refused, denying any interest or responsibility in the matter, notwithstanding his agreement in said deed to do so.  Post had at that time become irresponsible, and left that locality.  In order to avoid foreclosure, which Van Den Berge was about to begin, complainant was compelled to and did pay, on the

20th of October, 1910, the balance of $396.42 remaining unpaid on said mortgage, and received an assignment of the same and the note accompanying it, which assignment he recorded on October 25, 1910. Complainant's bill alleges that this sum of $396.42, withheld by defendants, constituted a trust fund in their hands to be used by them for the payment of said mortgage, and which defendant, now lawfully entitled to the same, can only recover in a court of equity.

The prayer of the bill asks—

"That said defendants may be decreed to pay to your petitioner the said sum of $396.42 and interest thereon from the said 20th day of October, A. D. 1910; that the said defendants may be decreed to be trustees in favor of your petitioner of the sum of $396.42, with interest thereon since the 20th day of October, A. D. 1910; that said defendants may be ordered as such trustees to account to your petitioner for said moneys and may be ordered to pay said sum thus in their hands as such trustees to your petitioner; that it may be decreed that the obligation of the said defendants, when they agreed to pay the said mortgage, inure to the benefit of your petitioner to the amount remaining unpaid on said mortgage; that it may be decreed that your petitioner has become subrogated to the rights of the said Jennie Smith to compel said defendants to fulfill their undertaking by which they had become responsible for said mortgage."

Defendant Sooy, answering, makes categorical and elaborate denial of the allegations in complainant's bill so far as it concerns himself and so far as he has knowledge of the matters alleged. He denies any knowledge of, or participation in, the various transactions detailed, except that he admits a quitclaim deed of said premises was executed by himself and wife to defendant Post. He particularly denies that he at any time purchased the premises with defendant Post or authorized the use of his name as one of the grantees, or that he in any way, by word or act, ratified the same, or assumed, or agreed to pay, the incumbrances upon said property. In conclusion, he submits to the court—

"That, if all the facts well pleaded in said bill were admitted to be true, complainant has failed to make a case that would entitle him to the relief sought, and asks to have the same benefit of these defects as if he had demurred to said bill, because defendant's obligation to pay said mortgage could be enforced only in case there was a deficiency on the foreclosure of said mortgage. And that complainant has an adequate remedy at law."

The testimony of numerous witnesses was taken at the hearing in this case; the only marked issue of fact being defendant Sooy's interest in the property in question. It was his claim that he had no interest whatever except to secure payment of the Heiftje mortgage, which was in his hands for collection. It is undisputed that he knew, by reason of holding this mortgage, the situation in relation to the property and called defendant Post's attention to it, telling him there was a chance to make an advantageous purchase. Post was a real estate dealer. Acting on Sooy's suggestion, he proceeded to negotiate for the property and purchased it. At the consummation of such purchase, the deed, with a promise to pay existing mortgages, was made to both defendants. The active handling of the property was by Post. He conducted both the purchase and sale. About the time he sold the property to complainant he obtained from Sooy and his wife a quitclaim deed, after which he, together with his wife, conveyed to complainant. Without reviewing the abundance of conflicting testimony, we are well satisfied with the conclusion of the trial judge that Sooy was a party with Post and interested in the purchase of this property. He does not, however, appear to have been an active participant in the negotiations relating to it, either when it was bought or sold, and there is nothing in the testimony to indicate any assumption of liability by him in connection with the incumbrances upon the property beyond what is shown in the deed to himself and Post. Post subsequently proved a defaulter and absconded.

In disposing of this case, we must assume it established

by the testimony that there was a delivery of the guardian's deed to Sooy and Post and an acceptance of it by them, with actual or implied knowledge of its contents. The acceptance by defendants of the deed in question conveying this property to themselves subject to certain specified incumbrances, with an express provision in said deed that they should assume and pay the same, bound them as effectually as though they also had signed the instrument, and, after they accepted the deed, the provision became an agreement on their part to assume and pay. A subsequent conveyance by them of the property to other parties, responsible or irresponsible, will not operate to relieve them of the obligation.

Such an agreement, though made with the grantor of the property, inures to the benefit of one having a mortgage upon it. He may treat both the buyer and seller as his debtors, and enforce it in a bill to foreclose. *Crawford* v. *Edwards*, 33 Mich. 354; *Miller* v. *Thompson*, 34 Mich. 10, 13; *Taylor* v. *Whitmore*, 35 Mich. 97, 99; *Carley* v. *Fox*, 38 Mich. 387, 389; *Hicks* v. *McGarry*, 38 Mich. 667, 668; *Higman* v. *Stewart*, 38 Mich. 513, 523; *Manwaring* v. *Powell*, 40 Mich. 371, 374; *Winans* v. *Wilkie*, 41 Mich. 264, 266 (1 N. W. 1049); *Booth* v. *Insurance Co.*, 43 Mich. 299, 301 (5 N. W. 381); *Unger* v. *Smith*, 44 Mich. 22, 24 (5 N. W. 1069); *Gage* v. *Jenkinson*, 58 Mich. 169 (24 N. W. 815); *Jehle* v. *Brooks*, 112 Mich. 131 (70 N. W. 440).

Complainant, being a purchaser of the property covered by this mortgage, when threatened with foreclosure and compelled to act to protect his title and save his property, could pay the incumbrance, and by so doing would thereby become an equitable assignee and owner of the mortgage, subrogated by operation of law, or legal subrogation, to the rights of the original mortgagee, and the mortgage, though in one sense paid, would yet remain uncanceled and still be operative, in full force and effect for his benefit. 3 Pomeroy's Equity Jurisprudence, § 1212. In this case, however, complainant secured an assignment of the

mortgage in writing, and therefore also holds by conventional subrogation. In either case he has the benefit of the mortgage, kept alive as to him, to enforce for his own benefit within the scope of the powers it gave to his assignor.

The serious question in this case is the right to recover in a court of equity against one only obligated by acceptance of a deed to pay a mortgage on property covered by the deed, without foreclosure proceedings taken in that connection, looking first to the land for payment, with contingent right of recovery against the obligee for deficiency.

In this State mortgages can only be foreclosed by statutory publication or a foreclosure suit in chancery. The jurisdiction of equity in foreclosure proceedings is purely statutory.

Section 519, 1 Comp. Laws, provides:

" If the mortgage debt be secured by the obligation or other evidence of debt of any other person besides the mortgagor, the complainant may make such person a party to the bill, and the court may decree payment of the balance of such debt remaining unsatisfied, after a sale of the mortgaged premises, as well against such other person as the mortgagor, and may enforce such decree as in other cases."

The power to make a personal decree against the makers of a mortgage upon real estate, or against others charged with its payment, comes entirely from the statute providing for chancery foreclosure. *Winsor* v. *Ludington*, 77 Mich. 215 (43 N. W. 866); *Vaughan* v. *Black*, 63 Mich. 215 (29 N. W. 523); *McCrickett* v. *Wilson*, 50 Mich. 513 (15 N. W. 885); *Kelly* v. *Gaukler*, 164 Mich. 519 (129 N. W. 703). There is no statutory authority for a chancery suit independent of foreclosure proceedings to recover against either the maker of the mortgage or others obligated to pay it.

Counsel for complainant, however, seek in this proceeding to establish trust relations between the parties so as to

bring the case within the general jurisdiction of courts of equity in the enforcement of trusts. To that end, the bill of complaint asks that defendants may be decreed to be trustees in favor of petitioner of the sum of money required to pay this mortgage, and that they be ordered, as such trustees, to account to complainant for such moneys, and ordered to pay the same over to him as such trustees, contending that, being barred from proceedings in a court of law and now having title to the property, which he cannot, or does not desire to, foreclose against himself, complainant may file a bill in chancery setting up the facts as they exist, and, without asking foreclosure, have a decree for a money judgment, with the same force and effect as in a suit at law.

We are unable to discern any trust relations between the parties which come within the purview of chancery jurisdiction, considering the alleged obligation as a bare promise to pay a debt. Separated from the mortgage, it is nothing more. This is not authorized by any provisions of the statute under which alone chancery has jurisdiction. The obligation is contingent on, and appurtenant to, the mortgage in relation to which only a money judgment for deficiency is authorized by the statute giving chancery courts jurisdiction.

Under the statute and former decisions of this court, we are of opinion that the bill cannot be sustained. The decree of the trial court dismissing the same is affirmed, with costs.

MOORE, C. J., and MCALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.